# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SKY ZONE, LLC, | Case No. 2:10-cv-00567-JCM-PAL |
| Plaintiff, | **SEALED ORDER** |
| vs. | |
| FLIP N OUT, LLC, | |
| Defendant. | |

The district judge referred the parties' claim construction disputes to the undersigned for decision. The court held a *Markman* hearing on April 9, 2013. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) (patent claim construction defines the scope of the patentee's rights and is a question of law decided by the court). Matthew Francis appeared on behalf of Plaintiff Sky Zone, LLC ("Sky Zone") and Jacob Reynolds appeared on behalf of Defendant Flip N Out, LLC ("FNO"). The court has considered Defendant's Opening Brief (Dkt. #75), Plaintiff's Claim Construction Brief (Dkt. #76), Plaintiff's Response (Dkt. #81), Defendant's Response (Dkt. #82), and the arguments of counsel at the hearing.

## BACKGROUND

This is an action brought by Sky Zone for patent infringement. Sky Zone accuses FNO of infringing U.S. Patent No. 5,624,122 entitled "Sport Game and Field" (the "'122 Patent"). Specifically, Sky Zone contends FNO infringes Claims 1-3 of the '122 Patent. The patent discloses a trampoline field used for sport and recreation. The patent was issued the Karin Maria K. Winkelhorn by the U.S. Patent Office ("USPO") April 29, 1997. Winkelhorn assigned the `122 Patent to the Plaintiff on April 12, 2002. Sky Zone opened a trampoline field based on the `122 Patent in Las Vegas in 2004. Flip N Out ("FNO") opened a trampoline field in Las Vegas in April 2010, which Plaintiff alleges directly infringes

the `122 Patent. Sky Zone sent FNO two cease and desist letters which FNO purportedly ignored. This lawsuit followed.

The Complaint (Dkt. #1) for patent infringement was filed April 20, 2010. The complaint seeks a judgment that Defendants have infringed and continue to infringe the `122 Patent; a preliminary and permanent injunction under 35 U.S.C. § 283 enjoining the Defendant, their agents, officers, directors, and all persons acting in privity or in concert with them from participating in any further infringement; a judgment finding the Defendant's infringement was wilful and deliberate for purposes of 35 U.S.C. § 284; infringement damages pursuant to 35 U.S.C. § 284; a judgment finding this is an exceptional case and an award of attorneys fees under 35 U.S.C. § 285; and an award of interest and costs. FNO filed an Answer (Dkt. #11) and Counterclaim (Dkt. #12) June 1, 2010. The counterclaim seeks a declaration of non-infringement, invalidity, and unenforceability of the `122 Patent.

Sky Zone filed a Motion for Partial Summary Judgment (Dkt. #56). FNO also filed a Motion for Summary Judgment (Dkt. #57). The district judge entered an Order (Dkt. #71) finding that, although the parties had stipulated to the construction of one means-plus-function limitation and that all the other claim terms needed no construction because they should be construed according to their plain and ordinary meaning, the parties actually had claim construction disputes. Specifically, he found the parties disagree over the plain meaning of the terms: "cable," "elongated," "in abutment with," and "extremity." Citing *O2 Micro Intl. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) the district judge found that the court had a duty to resolve the parties' disputes concerning the scope of these four claim terms. He therefore denied the motions for summary judgment as premature.

A scheduling order was entered, and the parties submitted their claim construction briefs. The matter was thereafter referred to me for a claim construction order. In addition to the four terms the district judge referred for claim construction, FNO's claim construction briefs asserts two additional terms need claim construction: "plurality," and "each panel being configured to space its edges from either a first or second cable defining a space."

## DISCUSSION

**I.     Legal Standard for Claims Construction.**

Patent infringement analysis involves two steps: (1) "the proper construction of the asserted

claim;" and (2) "a determination as to whether the accused method or product infringes the asserted claim as properly construed." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1581-82 (Fed. Cir. 1996) (*citing Markman*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996)). Interpretation and construction of patent claims is a matter of law for determination exclusively by the court. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *Affymetrix, Inc. v. Hyseq, Inc.,* 132 F. Supp. 2d 1212, 1218 (N.D. Cal. 2001) (*citing Markman,* 517 U.S. 370 (1996)). In *Markman,* "[t]he Supreme Court also acknowledged that the Court's role was limited to interpreting the contents of the patent as a document, leaving to the jury the interpretation of the construction of the devices alleged to infringe the patent – and that the line drawn between these roles may be a fine one." *Chad Industries, Inc. v. Automation Tooling Systems, Inc.,* 938 F. Supp. 601, 603-04 (C.D. Cal. 1996) (*citing Markman*, 517 U.S. at 379). The court's duty at the claim construction stage is only to interpret disputed claims. *Id.; see also Wang Labs, Inc. v. Mitsubishi Elect. Amer., Inc.,* 103 F.3d 1571, 1583 (Fed. Cir. 1997).

To construe the asserted claims, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *Interactive Gift,* 256 F.3d at 1582 (*quoting Vitronics,* 90 F.3d at 1582). The intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582. In examining the intrinsic evidence, the court must look first to the words of the claims themselves. *Affymetrix*, 132 F. Supp. 2d at 1218; *see also Vitronics,* 90 F.3d at 1582; *Bell Comm. Research, Inc. v. Vitalink Comm. Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995); *North Amer. Vaccine, Inc. v. Amer. Cyanamid Co.*, 7 F.3d 1571, 1575 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1069 (1994). The plain language of the claim defines the boundaries and scope of the claim. *Teleflex, Inc. v. Ficosa North Amer. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (*citing Bell Comm.,* 55 F.3d at 619-20. "[T]he language of the claim frames and ultimately resolves all issues of claim interpretation." *Id.* (*quoting Abtox, Inc. v. Exitron Corp.,* 122 F.3d 1019, 1023 (Fed. Cir. 1997)). It is the claims, not the specification, that "provide the measure of the patentee's right to exclude." *Johnson & Johnston Assoc., Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (*citing Milcor Steel Co. v. George A. Fuller Co.,* 316 U.S. 143, 146 (1942)).

The language of the claims "must be construed objectively, as 'one skilled in the art would construe [it]." *Chad Industries,* 938 F. Supp. at 608 (*citing SmithKline Diag. v. Helena Lab Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988); *see also Affymetrix,* 132 F. Supp. 2d at 1218 (words to be given their ordinary and customary meaning unless it is clear from the specification and prosecution history that the inventor intended a different meaning). While examination of the language of the actual claims is the court's first and foremost duty, the court should also interpret the claims in view of the specification. *See Vitronics*, 90 F.3d at 1582; *Affymetrix,* 132 F. Supp. 2d at 1218 (*citing Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)). In *Vitronics,* the court held:

> The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

90 F.3d at 1582. The court may also consider the prosecution history, if necessary. *Id.*

In the majority of cases, "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Id.* at 1583. Moreover, in cases in which the intrinsic evidence unambiguously describes the scope of the patent and defines the claim language, the court may not rely on extrinsic evidence of any kind. *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed. Cir. 1995). If however, the claim terms are still ambiguous after evaluating the intrinsic evidence, the court may look to extrinsic evidence, or any evidence external to the file wrapper of the patent. *Vitronics*, 90 F.3d at 1584. Examples of extrinsic evidence include expert testimony, inventor testimony, dictionaries, treatises, and articles. *Id.* Prior art references may also be included in extrinsic evidence, even if those references are not cited in the patent history. *Id.* However, "[s]uch instances will rarely, if ever, occur." *Interactive Gift*, 256 F.3d at 1332 (*citing Vitronics*, 90 F.3d at 1585).

The Federal Circuit indulges a "heavy presumption" that a claim term carries its ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (quotation omitted); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1341 (Fed. Cir. 2001); *Kegel Co., v. A.M.F. Bowling, Inc.*, 127 F.3d 1420, 1427 (Fed. Cir. 1997); *C.C.S. Fitness, Inc., v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002); *Golight v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1332 (Fed. Cir. 2004). There are four

ways the heavy presumption of ordinary meaning can be overcome:

1. if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history. *C.C.S. Fitness*, 28 F.3d at 1366;

2. if the intrinsic evidence shows that the patentee distinguished the term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention. *Id.* at 1366-67;

3. if the claim term chosen by the patentee so deprived the claim of clarity as to require resort to the other intrinsic evidence for a definite meaning. *Id.*; and

4. if the patentee phrased the claim in step-or means-plus-function format.

*Id*.

In construing a claim term's ordinary meaning, the court must view the claim terms through the lens of a person of "ordinary skill in the art in question" as of the patent application date. *Phillips*, 415 F.3d at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* For example, other claims in the patent may assist in determining a claim term's meaning because claim terms are normally used consistently throughout the patent. *Id.* Use of a term in one claim can clarify the meaning of the same term in other claims. *Id.* at 1314. The Federal Circuit has found that "the specification is the single best guide to the meaning of a disputed term, and that the specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Phillips*, 415 F.3d at 1320-21 (citation omitted).

In *Phillips,* the Federal Circuit noted that "[i]n light of the statutory directive that the inventor provide a full and exact description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Goff v. Harrah's Operating Co., Inc.*, 412 F.Supp.2d 1090, 1093 (D. Nev.2005) (*citing Phillips*, 415 F.3d at 1316 (citation omitted)). In fact, the court found that "[w]e

cannot look at the ordinary meaning of the term . . . in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Phillips*, 415 F.3d at 1313 (*citing Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)).  The specification is "always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips,* 415 F.3d at 1316 (*citing Vitrionics,* 90 F.3d at 1582); *Multiform Dessicants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1478 (Fed. Cir. 1998) ("the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention"); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention").

The claims define the metes and bounds of the patent's invention. *Phillips*, 413 F.3d at 1313.  However, the court may not read limitations from the specification into the claims. *Id*. at 1323.  There is a distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim. *Id*. at 1333.  This distinction is often difficult to apply in practice. *Id*.  Or, as the Federal Circuit explained, "[t]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998).  In summary, the claims of the patent define the invention and the specification teaches one skilled in the art to make and use the invention.  However, the claims of a patent are not limited by the examples given in the specification, even if the specification describes only a single embodiment, or example, absent a "clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Linear Tech Corp. v. U.S. Int'l Trade Comm.*, 566 F.3d 1049, 1058 (Fed. Cir. 2009) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

**II.    The Parties' Claim Construction Positions.**

The district judge determined that four terms required claim construction: "elongated," "cable," "in abutment with," and "extremity."  FNO's opening claim construction brief also asserts the additional terms "plurality" and "each panel being configured to space its edges from either a first or second cable defining a space" require claim construction.  Sky Zone asserts no construction of these terms is needed.

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| Cable | Wire rope or chain. | A segment of metal rope composed of steel fibers, between ½" and 3/4" thickness, and not a spliced or segmented rope or chain containing various links. |
| Elongated<br><br>Elongated steel cables | Long in relation to its width. | Cables that extend beyond a single trampoline bed between extremities, where the cables are secured for support; specifically, the cables extend from one edge of the field of play to the other edge of the field of play. |
| In abutment with | Touching or next to. | Touching or in direct contact. |
| Extremity & Extremities | The farthest or most remote part, section, or point. | The end point, and specifically, the end point of the cable at the edge of the field of play, where the cable is supported. |
| Plurality | Two or more. | Many or several. |
| Each panel being configured to space its edges from either a first or second cable defining a space. | Does not need construction. | That each panel (trampoline surface) *must* be configured (or sized or cut) to fit within and connect to first and second cables without being allowed to overrun a cable or a plane where a cable runs or exists, but must fit within the space between the first and second cables as defined by the cable grid. |

The disputed claim terms appear in claims 1 through 3. Both sides agree that claim 1 is an independent claim on which claims 2 and 3 depend.

Claim 1 of the `122 Patent recites:

A supported surface for transitional movement, said surface being formed of:

a. a grid of elongated steel cables disposed above a ground level, said grid being formed of a plurality of first parallel cables spaced from each other, and a plurality of second steel cables disposed transversely of an in abutment with the first cables, said second steel

  cables being parallel to, and spaced from, each other, said first and second cables defining a plurality of open spaces between the cables;

  b. means to support each of said cables at their respective extremities;

  c. a plurality of first panels, each of said first panels being formed of a yieldable heavy fabric having edges and each panel being configured to space its edges from either a first or second cable defining a space;

  d. a plurality of resilient elements extending outwardly from each edge of each panel for attachment to the nearest of said first and second cables, thereby to support the panel on said first or second cables within a space defined by said cables; and,

  e. a plurality of elongated cover means, the last said means each compromising a padded sheet material having a width greater than the distance between parallel edges of adjacently disposed panels, each said cover means being disposed over at least a portion of one of the first and second cables and the resilient means attached thereto and extending from the edge of a first panel.

Claim 2 of the `122 patent recites:

  The supported surface as described in Claim 1, wherein the resilient means are coil springs.

Claim 3 of the `122 patent recites:

  The supported surface as defined in Claim 1, wherein the configuration of the surface is rectangular and the means to support the grid of cables comprises a first vertical post of a predetermined height disposed at each corner of the rectangle and third steel cables each extending between adjacent corner posts thereby presenting pairs of oppositely disposed parallel cables, the first and second cables being secured to extend between one of the pairs of oppositely disposed parallel third cables.

**A. "Cable"**

The term "cable" is used in Claims 1 and 3, and in the specification for the `122 Patent. Claims 1 and 3 of the `122 Patent and the specification describe the cables as "steel" cables (2:8; 3:62), and both sides agree the cables are steel. However, Sky Zone argues there is no other limitation on what the word "cable" means. Sky Zone contends that the extrinsic evidence establishes that the accepted meaning of the term "cable" includes "wire rope or chain." Sky Zone supports its proposed claim construction by citation to several extrinsic sources. The first is the second declaration of Scott Schroeder, Ph.D., PE, ("Schroeder, Second Decl.") which was attached as Exhibit "1" to Sky Zone's reply in support of its motion for summary judgment (Dkt. #67). Schroeder opines that "one of ordinary skill in the art at the time the `122 Patent was filed would recognize a chain as a kind of cable in the context of the `122 Patent." *Id.*, at ¶7. Schroeder relies on a dictionary cable definition from Merriam-Webster found at

http://www.merriam-webster.com/dictionary/cable in opining that "a chain is one form of a cable." *Id.*, ¶5.

Sky Zone also relies on the declaration of Vinh H. Pham submitted in support of Sky Zone's motion for partial summary judgment and in support of its motion to dismiss Defendant's counterclaim ("Pham Declaration"). Mr. Pham is an attorney for Sky Zone. Pham Declaration, Exhibit "1" (Dkt. #56, ¶1) Pham's declaration attests that true and correct copies of the definition of the word "cable" from the Oxford Dictionary's website, last visited May 22, 2012, are attached to his declaration. Sky Zone argues that the way the term "cable" is used in the intrinsic record of the `122 Patent does not deviate from Sky Zone's proposed construction. In a footnote to its claim construction brief, Sky Zone points out that other alleged infringers agree with this widely accepted definition of the term "cable" and cites the Defendants' claim construction brief in a case pending in this district, Sky Zone, LLC v. Raymond, et al., Case No. 3:11-cv-00141-LRH-WGC. There, the Defendants stipulated to the construction of the term "steel cables" as a "steel wire, rope or chain." (Defendants' Opening Claim Construction Brief (Dkt. #43)).

Plaintiff contends that FNO initially conceded that a chain satisfied the "cable limitation of Claim 1, but "backtracked" in its opposition to Plaintiff's motion for summary judgment by arguing a "chain" was excluded from the definition of the term "cable." Sky Zone argues that because a chain resembles a cable, it is a cable. Nothing in the intrinsic record limits the term "cable" to a subset of cables that excludes chains, and no evidence suggests that the claimed invention precludes a chain from being used in place of a non-chain cable or "segments thereof." The term "cable" is commonly understood, not a technical term of art, and should be construed according to its widely accepted and broad meaning. Sky Zone points out that FNO also cited Webster's cable definition in its response to Plaintiff's Motion for Summary Judgment (Dkt. #65). Webster's defines a "cable" as "something resembling a cable." FNO's proposed claim construction that would limit the definition to cables between a half inch to three-quarters of an inch in diameter as FNO proposes does not appear in any of the claims of the `122 Patent. This language occurs in the specification which uses the word "may" which indicates the suggested diameter is not a requirement. Additionally, under established law, it is

/ / /

improper to limit claims to the preferred embodiments, or other embodiments described in the specification.

FNO argues that Sky Zone is attempting to import an uncommon definition of the term "cable" from the Oxford Dictionary online which defines a cable, inter alia, as "a thick rope of wire or non-metallic fiber, typically used for construction, mooring ships and towing vehicles" as, for example, "the chain of a ship's anchor." FNO accuses Plaintiff of selectively quoting from this widely accepted dictionary definition in a self-serving way. FNO acknowledges that other dictionaries also use the term "chain" as part of the definition of "cable" but seems to argue that its context is limited to chains for anchoring ships. As the patented trampoline system does not involve the anchoring of ships, FNO argues, the court should reject this construction.

FNO argues that all of the dictionary definitions that Sky Zone cites are "directly contradicted by the plain language of the patent." In the specification, the inventor "is quite specific about what it means for the cables of the invention." FNO relies on language in the specification provision that states "the panels are supported by a grid of steel cables, each of which may be between one-half of a inch to three-quarters of an inch in diameter." Thus, while the dictionary defines "cable" to include a thick rope of non-metallic fiber, the patent specifies steel and the specification makes it clear the patent is limited to a trampoline "array created with elongated steel cables, one-half inch to three-quarter inch in diameter, extending across the full length of the planar area, with a single segment of cable (not spliced together), compromising the array–as opposed to segments of cable connected to a chain."

FNO refers the court to Exhibit "F", a photograph which depicts a wire cable and a chain, and argues that if the court asked ten random people to identify the "cable" in the exhibit "all ten would point to the thin rope of steel fibers" and that "only engineers and attorneys who are being paid great amounts of money would argue differently." Finally, FNO argues that if chains are really "cables" there is no reason for Plaintiff to hire experts to opine "chains are cables." ("If chains are cables, then Plaintiff's experts are being unnecessarily redundant.")

The court finds FNO's claim construction arguments about the term "cable" frivolous. FNO's claim construction brief acknowledges that it is arguing "preemptively", anticipating that Sky Zone will claim that chains are equivalent to cable. It shows the court a picture and contends that ten out of ten

-10-

ordinary people would conclude that the thin rope of steel fibers depicted in the photograph is the "cable" rather than the chain that "only engineers and attorneys . . . being paid great amounts of money" would dispute.  FNO has no other support for its argument that Sky Zone's proposed claim construction requires accepting "uncommon" dictionary definitions.  FNO's argument that the dictionary definitions which provide definitions and then examples like "the chain of a ship's anchor" means a "chain" has "a separate meaning used in connection with anchoring ships" is absurd.

FNO cites nothing in the patent itself that contradicts the commonly accepted dictionary definitions of the term "cable."  Rather, FNO relies upon language in the specification indicating that a grid of steel cables **may** "be between one -half of an inch to three-quarter of an inch in diameter."  The plain language of the portion of the specification FNO cites forecloses FNO's construction.  The term "may" indicates the specification is describing a permissive, rather than a mandatory, range of diameters.  A court may not limit claim terms to the embodiments described in the specification, particularly the preferred embodiments.  *Phillips v. A.W.H. Corporation*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).  The language FNO relies upon in the specification is merely a description of the preferred embodiment.

Despite its protestations to the contrary, FNO is transparently attempting to engage in claim construction to support its non-infringement arguments.  The court finds that the plain and ordinary meaning of the term "cable" is a "wire rope or chain" and therefore adopts Sky Zone's proposed construction of this term.  Nothing in the `122 Patent itself limits cables to a diameter between one-half and three-quarter inches.  All of the dictionary definitions support Sky Zone's construction.  FNO's gratuitous remarks that the inventor is an "entertainer" rather than an "engineer" does not alter the court's conclusion that one of ordinary skill in the art at the time the `122 Patent was filed would conclude that a "cable" is a "wire rope or chain".  The court agrees with Sky Zone that the term "cable" is commonly understood and not a technical term of art.  It should therefore be construed according to its widely-accepted and broad meaning.

B.   **"Elongated"/ "Elongated Steel Cables"**

Sky Zone's proposed construction would define the term as "long in relation to its width".  Sky Zone argues that the word "elongated" is not a technical term of art and does not require elaborate interpretation.  The claim language makes it clear that "elongated" means "long in relation to its width"

1 or more simply, "long". The presumption of ordinary meaning applies, and Claim 1 of the `122 Patent
2 uses the term "elongated" consistent with Sky Zone's proposed construction. Although the specification
3 is not given the same weight as the claim itself, it also supports Sky Zone's proposed construction.
4 Because the intrinsic evidence (the patent and specification) clearly supports Sky Zone's proposed
5 construction, the court need not examine any extrinsic evidence. However, even dictionary definitions
6 cited by FNO are consistent with Sky Zone's proposed construction. For example, FNO cites the
7 American Heritage Dictionary, Fourth Edition, which defines "elongated" as an adjective, as "having
8 more length than width; slender."

9 FNO argues that Claim 1 of the `122 Patent incorporates the limitation "elongated" in the
10 provision describing "a grid of elongated steel cables . . .". The American Heritage Dictionary, Fourth
11 Edition offers two definitions of the term: first, "made longer, extended"; second, "having more length
12 than width; slender." FNO "submits that the second definition is meaningless in the context of cable,
13 because all cable is longer than it is wide." Therefore, the first dictionary definition must apply.

14 FNO contends that the specification provides context and that the patent describes a preferred
15 embodiment of a playing field of certain dimensions outfitted by trampoline beds of specified
16 dimensions. Thus, "the patent description can be used as a dictionary" and "it is clear, as a practical
17 matter, that the cable lengths of Claim 1 are longer than, or extend beyond the dimensions of the
18 individual trampoline beds they define." FNO contends that Claim 1 claims cables which define more
19 than a single trampoline bed, which must necessarily extend beyond any single trampoline bed and are
20 therefore "elongated." The specification indicates that the cables must extend from one edge of the field
21 of play to another, and states that the "cables themselves are supported at the edges of the field by being
22 secured to a plurality of vertical posts." Therefore, FNO claims that "the elongation must occur between
23 extremities, and the extremities are at the edges of the field of play." FNO contends that the Claim 1 and
24 the specification establish that: (1) the cables that create the planar grid playing field, running both
25 longitudinally and transversely, extend 'across the full length of the planar area'"; and (2) "the only place
26 / / /
27 / / /
28 / / /

where the cables are 'secured' for support is at their extremities at either edge of the field of play." Thus, the court should adopt FNO's claim construction in construing the term "elongated steel cables."[1]

Sky Zone replies that FNO has altered the construction of the term "elongated" from the construction offered in its summary judgment briefs. Additionally, Sky Zone points out that although FNO argues that the terms in dispute are not complex and the terms should be given ordinary meaning, FNO offers "an elaborate and non-infringement-inspired construction of the term." Sky Zone reiterates that the meaning of the word "elongated" is readily apparent and that claim construction should involve application of the term's widely accepted meaning which is "long in relation to its width" or simply "long." FNO's example of a 75-foot by 165-foot rectangular playing field to support its claim construction would improperly narrow the claims of the `122 Patent. Sky Zone agrees that there must be a grid created by cables, but disputes that the `122 Patent limits the number of trampoline beds that constitute the grid. The fact that the cables of the `122 Patent must form a "grid" does not mean that every cable must extend the entire field of play, from one perimeter to the other, without intermittent "extremities" as FNO argues.

The court agrees that the plain and ordinary meaning of the term "elongated" means "long in relation to its width" and adopts Sky Zone's proposed claim construction. The court also agrees with Sky Zone that FNO's elaborate, wordy, proposed construction of the term is intended to support its non-infringement arguments. The claims of a patent define the invention. Although the court may consult the specification to provide proper context of claim terms, the court may not read limitations from the specification into the claims. FNO's proposed construction would import limitations from the preferred embodiment into the claim.

**C.      "In Abutment With"**

This term is found in Claim 1a which recites:

a. a grid of elongated steel cables disposed above a ground level, said grid being formed of a plurality of first parallel cables spaced from each other, and a plurality of second steel cables disposed transversely of and in abutment with the first cables, said second steel cables being parallel to, and spaced from, each other. Said first and second cables defining a plurality of open spaces between the cables.

---

[1]Again, Sky Zone does not dispute that the cables identified in the `122 Patent are steel cables. *See* Response in Support of Claim Construction (Dkt. #81, p.5, n.2).

Sky Zone's proposed construction of this term relies on the specification which twice uses the term "abut" to indicate that the panels in the end zones of the field are next to, but not directly contacting, the ends of the field. Sky Zone contends that the specification describes panels connected to cables via springs, which "obviously cannot directly touch the angled ends of the field." The references in the specification to the term "abut" and "abutting" show that the term "in abutment with" includes "next to," and does not require direct touching or contact.

Sky Zone also relies on extrinsic evidence in the form of dictionary definitions to support its proposed construction. Oxford Dictionary online demonstrates that the accepted meaning of the term "in abutment with" is "touching, or next to." This specification alone is sufficient for the court to adopt Sky Zone's proposed claim construction, and reference to extrinsic evidence is not required. However, even if the court considers FNO's dictionary references, they show that "abutment" does not require touching. The Webster's II Dictionary definition cited by FNO defines "abut" as "to border on; adjoin." "Adjoin" is defined, among other things, "to be close to or in contact with one another," and "to lie next to or in contact with." Use of the disjunctive "or" indicates this can mean "to be close to" and does not require contact or touching.

FNO argues the term "in abutment with" as used in Claim 1a refers to two objects touching each other. FNO claims that the Oxford Dictionary definition that defines the term as "touching or next to" does not support Sky Zone's construction because the same dictionary definition says "of an area of land or building (be next to or have a common boundary with)." A separate definition defines the term as to "touch or lean upon." FNO also relies on a 1995 dictionary definition that defines the term as "to touch at one end or side of something.–vt. To border on; adjoin." This 1995 dictionary definition is relevant, FNO argues, because the patent was submitted in 1996. FNO also asserts that the patent specification refutes Plaintiff's proposed construction and supports a definition that "in abutment with" means "in direct contact." This is because the specification provides that the trampoline mats themselves are "supported by a grid of interconnected cables within the area defined by the end and side cables." Use of the term "interconnected" clarifies that "in abutment with" clearly means with "touching" at the intersections, meaning they are in direct contact.

/ / /

Sky Zone's response points out that FNO's claim construction of this term is slightly different from the construction offered in its summary judgment briefs. In summary judgement briefs, FNO defined the term as "direct touching or contact." The fact that the Oxford Dictionary definition Sky Zone relies upon mentions land and buildings in parenthesis does not mean that the definition does not or cannot apply to the `122 Patent or cables. Sky Zone also disputes that the term "abutment" in the intrinsic record of the `122 Patent deviates from this dictionary definition. Additionally, even FNO's dictionary references demonstrate that "abutment" does not require touching. The 1995 Webster's definition FNO cites also defines the term "abut" to mean "to border on: ADJOIN." (Capitalization in the original). Merriam-Webster defines the term "adjoin" to mean, among other things, "to be close to or in contact with one another," and "to lie next to or in contact with." FNO uses the word "interconnected" to argue what "abut" means in the `122 Patent. However, the `122 Patent specification uses the actual terms at issue, and FNO may not "cherry pick" a term from the description in the preferred embodiment to construe the term "abutment". The specification clearly shows that no direct touching is necessary, and both the intrinsic and extrinsic evidence supports Sky Zone's proposed construction.

The court finds that the plain and ordinary meaning of the term is consistent with Sky Zone's proposed construction. The claim language does not suggest that the grid of panels described must touch or be in direct contact. FNO is again attempting to import a limitation from a description contained in the preferred embodiment. Common dictionary definitions define the term "abutment" using the disjunctive "or" demonstrating that something "in abutment with" may, but need not necessarily touch or be in direct contact with what it abuts or adjoins. The court therefore adopts Sky Zone's proposed construction of this term.

### D. "Extremity"/ "Extremities"

The word "extremity" is not specifically used in the `122 Patent. The term "extremities" is used in Claim 1b. Sky Zone's opening claim construction brief indicated that the parties agreed on the accepted common dictionary definition of the term. The way this term is used in the intrinsic record of the `122 Patent does not deviate from an ordinary dictionary definition which defines the term "extremity" as "the farthest or most remote part, section, or point." This is the dictionary definition FNO

relied upon in its summary judgment briefs, and Sky Zone believed the parties had agreed to this construction.

FNO argues that because the term "extremities" only appears in one place in the patent, in Claim 1b, the term is linked with the phrase "means to support". To read the term "extremities" in harmony with the phrase "means to support" indicates that the patent "obviously intended that the cables extend from one edge of the field of play to the other." This is because the specification states that the "cables themselves are supported at the edges of the field by being secured to a plurality of vertical posts." According to FNO, whenever the specification addresses cables being supported, it is always "at their ends" to heavy supporting poles, or "secured" to the end cables or posts at the "edges of the field." Thus, the specification of the Patent makes it clear the term "extremities" must be at the edges of the field of play or at "the end point" of the cable. FNO asserts that this "tracks" common dictionary definitions of the term as well.

Sky Zone replies that FNO has offered a different claim construction than the one offered in its summary judgment briefs. In its motion for summary judgment, FNO defined "extremity" as "the farthest or most remote part, section or point," citing Merriam-Webster's dictionary. FNO's claim construction brief, however, adopts a narrower construction which requires that all cable extremities be located at the very edge of the field of play, that is, on the outside of the farthest–most perimeter of the given trampoline field. This is an overly-narrow reading of the `122 Patent and the court should adopt the parties' previously agreed-upon construction of the term "extremities."

The district judge's Order (Dkt. #71) denying the parties' summary judgment motions found that the parties were not in agreement with the plain meaning of this term. In its motion for summary judgment, FNO argued that its accused product did not employ a grid of elongated steel cables supported at their extremities. It argued that the `122 Patent "provides for crisscrossing elongated steel cables, supported at the extremities, forming an array of open spaces accommodating trampoline beds, with padding covering the cables and framing the trampoline beds." (Dkt. #57, 3:17-20). It asserted there was no dispute that the Defendants' accused trampoline system does not employ crisscrossing elongated steel cables supported at the extremities. Rather, the accused product employs "intermediate support posts at each intersection and cable segments." It asked for summary judgment on the grounds the

undisputed facts show that its system did not infringe the `112 Patent, arguing the parties' only dispute was whether FNO's trampoline system is equivalent to the system recited in Claim 1. FNO argued that its trampoline system was much different from the one described in Claim 1 because it used intermediate support posts in addition to peripheral support posts around its trampoline surface.

Sky Zone responded that nothing in Claim 1 requires the peripheral support posts to be the only support for the cables. Sky Zone acknowledged that peripheral support posts that are, by themselves, capable of supporting the cables at their extremities would satisfy the claim limitation. However, it argued that peripheral support posts that act in concert with intermediate support posts satisfy this claim limitation of Claim 1 as well. Sky Zone also argued that nothing in Claim 1 requires the "extremity" of the cables, and the "support posts" to be exactly on the perimeter of the trampoline surface or prevents the cable extremities and support posts from being located outside the perimeter. The specific language of Claim 1 states a "means to support each of said cables at their respective extremities" and there is no reason why the invention does not cover both a grid of elongated cables, and intermediate support posts.

The court adopts Sky Zone's proposed construction finding it comports with plain and ordinary meaning. FNO's proposed claim construction supports its summary judgment arguments on non-infringement. The court concludes that the way the term "extremities" is used in Claim 1b and in the patent specification does not deviate from common dictionary definitions which define the term as "the farthest or most remote part, section, or point."

**E.    "Plurality".**

Sky Zone's opening brief did not propose a claim construction for this term because it was not one cited by the district judge's order denying summary judgment. FNO's opening claim construction brief asks that the court construe the term to mean "many" and avoid the "temptation" to construe the term as "more than one." FNO contends that the patent language strongly indicates the term is more appropriately defined as "a large number of things" or "many" which is consistent with the Oxford Online dictionary definition. The patent describes a plurality of cables and FNO maintains that because the patent specifically states that the plurality of cables and mats "may best be understood" by considering Figure 3, it is "inconceivable" that the system contains only two cables going in either direction. It is also "imprudent" to believe the plurality of trampolines described in the patent could

result in a two-trampoline field because Figure 3 describes the concept of a grid. Therefore, the "strong indication" is that the term must mean several or many and not merely more than one.

Sky Zone argues the term requires no claim construction and was not one the district judge referred for construction. However, the ordinary meaning of the term "plurality" has been construed by the Federal Circuit and other courts which have construed the term to mean "two or more." Nothing in the `122 Patent specification or other intrinsic or extrinsic evidence deviates from this plain and ordinary meaning.

The court finds that there is nothing in the `122 Patent or specification that limits the plain and ordinary meaning of the term "plurality" as FNO proposes. Notwithstanding FNO's arguments that the court should avoid the "temptation" and that it would be "imprudent" the court finds that the term means "more than one." The court therefore adopts Sky Zone's proposed construction.

### F. "Each Panel Being Configured to Space its Edges from Either a First or Second Cable Defining a Space."

Sky Zone's opening brief also did not propose a claim construction for this term because it was not one cited by the district judge's order denying summary judgment. FNO's opening claim construction brief argues this term requires construction, although it seems clear, "to protect the record." FNO argues it is clear that this phrase means "that each panel (trampoline surface) must be configured (or sized to cut) to fit within and connect to first and second cables without being allowed to overrun a cable or a plane where the cable runs from one edge of the playing field to the other edge, but must fit within the space between first and second cables as defined by the cable grid."

Sky Zone points out that this is not a single phrase requiring construction, but constitutes approximately half of the text of Claim 1C. FNO's proposed claim construction asks the court to construe Claim 1C to require that every trampoline panel surface fit between a first and second cable and not "overrun a cable or plane where a cable runs or exists." The term "overrun" does not appear anywhere in the patent specification.

The court agrees that FNO is attempting to import a limitation into the claim and proposing a claim construction to support its non-infringement arguments. Nothing in the intrinsic record supports

/ / /

FNO's proposed construction which uses a term not found in the patent itself.  Half the text of Claim 1c does not need construction.

Having considered the parties' briefs, arguments, and exhibits,

**IT IS ORDERED** that the disputed claims of the asserted patent are construed as follows:

## U.S. PATENT NO. 5,624,122

| CLAIM TERM | CONSTRUCTION |
|---|---|
| Cable | Wire rope or chain. |
| Elongated/Elongated Steel Cables | Long in relation to its width. |
| In Abutment With | Touching or next to. |
| Extremity & Extremities | The farthest or most remote part, section, or point. |
| Plurality | Two or more. |
| Each panel being configured to space its edges from either a first or second cable defining a space | Does not need construction. |

Dated this 27th day of January, 2014.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE