1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                         DISTRICT OF NEVADA
7
8   | SKY ZONE, LLC,                              2:10-CV-567 JCM (PAL)
9   |                Plaintiff(s),
10  | v.
11  | FLIP N OUT, LLC,
12  |                Defendant(s).
13

14                            **SEALED ORDER**

15          Presently before the court is plaintiff Sky Zone, LLC's renewed motion for partial summary

16  judgment.[1] (Doc. # 85). Defendant Flip-N-Out, LLC has filed a response (doc. # 86), to which

17  plaintiff replied (doc. # 88).

18          Also before the court is defendant's renewed motion for summary judgment.[2] (Doc. # 87).

19  Plaintiff has filed a response. (Doc. # 89).

20  **I.      Background**

21          The instant dispute arises out of alleged infringement of U.S. Patent No. 5,624,122 ("'122

22  patent"). (Doc. # 1). The '122 patent involves a trampoline field used for sport and recreation. (Doc.

23  # 56-3). The patent was issued on April 29, 1997, to Karin Maria K. Winkelhorn. (Doc. # 1 at 3).

24  On April 12, 2002, Winkelhorn assigned the '122 patent without limitation to plaintiff Sky Zone,

25  LLC. (Doc. # 56-12). In 2004, plaintiff opened a trampoline field based on the '122 patent in Las

26  _____

27          [1] Renewing motion for partial summary judgment (doc. # 56).

28          [2] Renewing motion for summary judgment (doc. # 57).

**James C. Mahan**
**U.S. District Judge**

1   Vegas, Nevada. (Doc. # 56-1).

2       In April 2010, defendant Flip-N-Out, LLC opened a trampoline field in Las Vegas. (Doc. #

3   56-4). Plaintiff alleges that defendant's trampoline field directly infringes on the '122 patent. (Doc.

4   # 1). Upon discovery of this alleged infringement, plaintiff sent defendant two cease and desist

5   letters, to which defendant has not replied. (Doc. # 56-3, 4).

6       Plaintiff brings the instant suit alleging infringement of the '122 patent under 35 U.S.C. §

7   271, *et seq*. (Doc. # 1). Defendant filed a counterclaim seeking a declaration of non-infringement,

8   invalidity, and unenforceability of the '122 patent. (Doc. # 11). Plaintiff's underlying motion sought

9   a judgment determining that defendant's trampoline field infringed on claims 1-3 of the '122 patent

10   literally or under the doctrine of equivalents. (Doc. # 56). Defendant's underlying motion sought a

11   declaration that its trampoline field does not infringe plaintiff's '122 patent as to claims 1-4. (Doc.

12   # 57).

13       This court denied both underlying motions without prejudice and referred the matter to

14   Magistrate Judge Leen for a *Markman* hearing. (Doc. # 71). After the magistrate judge issued her

15   claim construction order (doc. # 84), the parties filed the instant renewals of their underlying

16   summary judgment motions.

17   **II.    Legal Standard**

18       The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

19   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

20   show that "there is no genuine issue as to any material fact and that the movant is entitled to a

21   judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to

22   isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

23   (1986).

24       In determining summary judgment, a court applies a burden-shifting analysis. "When the

25   party moving for summary judgment would bear the burden of proof at trial, it must come forward

26   with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

27   In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

28

**James C. Mahan**
**U.S. District Judge**

of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    **III.    Discussion**

2         A patent infringement analysis involves two steps: "first, the scope of the claims are

3    determined as a matter of law, and second, the properly construed claims are compared to the

4    allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least

5    one claim are present, either literally or by a substantial equivalent, in the accused device." *Teleflex,*

6    *Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

7         The interpretation of patent claims is a question of law to be decided by the court. *Markman*

8    *v. Westview Instruments, Inc.*, 517 U.S. 370, 371-73 (1996). In construing claims of a patent, the

9    court looks to three sources of intrinsic evidence: (1) the claim language, (2) the patent specification,

10   and (3) the prosecution history of the patent. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

11   979-80 (Fed. Cir. 1995), 517 U.S. 370 (1996). If the intrinsic evidence does not resolve the meaning

12   of a term, extrinsic evidence such as dictionaries may be considered. *Phillips v. AWH Corp.*, 415

13   F.3d 1303, 1317-18 (Fed. Cir. 2005).

14        "In construing patent claims, there is a heavy presumption that the terms carry their ordinary

15   and customary meanings as would be understood by one of ordinary skill in the art." *See Goldenberg*

16   *v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004). Often, the meaning of a claim term will be

17   readily apparent, and construction will involve little more than the "application of the widely

18   accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

19        Literal infringement requires that the accused device or method literally contain each and

20   every limitation of the asserted claim. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford*

21   *Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). To prove literal infringement, the patentee must

22   show that the accused device contains every limitation in the asserted claims. *Mas-Hamilton Grp.*

23   *v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). If even one limitation is missing or not met

24   as claimed, there is no literal infringement. *Id.* However, "[a] device is not saved from infringement

25   by adding elements beyond those claimed in a patent; if a claim reads on part of an accused devise,

26   then the entire accused device infringes on the claim." *Shuffle Master, Inc. v. MP Games, LLC*, 553

27   F. Supp. 2d 1202, 1213 (D. Nev. 2008)*.*

28

**James C. Mahan**
**U.S. District Judge**                                                            - 4 -

1      If a claim limitation is not literally infringed, the accused product may still infringe that

2   limitation under the doctrine of equivalents. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149

3   F.3d 1309, 1315 (Fed. Cir. 1998). This doctrine "loosens the requirements of literal infringement,

4   allowing a finding of infringement where one or more limitations of an asserted claim are not

5   literally met, but are met by an equivalent embodiment." *Shuffle Master, Inc.*, 553 F. Supp. 2d at

6   1213. The accused product may also infringe under the doctrine of equivalents if the difference "can

7   be fairly characterized as an insubstantial change from the claimed subject matter without rendering

8   the pertinent limitation meaningless." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350,

9   1359 (Fed. Cir. 2005). The equivalency analysis "requires an intensely factual inquiry." *Toro Co.*

10  *v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1369 (Fed. Cir. 2001).

11      Claim 1 of the '122 patent states:

12      A supported surface for transitional movement, said surface being
        formed of:

13

14      a.    a grid of elongated steel cables disposed above a ground level,
              said grid being formed of a plurality of first parallel cables
              spaced from each other, and a plurality of second steel cables
15            disposed transversely of and in abutment with the first cables,
              said second steel cables being parallel to, and spaced from,
16            each other, said first and second cables defining a plurality of
              open spaces between the cables;

17
        b.    means to support each of said cables at their respective
18            extremities;

19      c.    a plurality of first panels, each of said first panels being
              formed of a yieldable heavy fabric having edges and each
20            panel being configured to space its edges from either a first or
              second cable defining a space;

21
        d.    a plurality of resilient elements extending outwardly from
22            each edge of each panel for attachment to the nearest of said
              first and second cables, thereby to support the panel on said
23            first or second cables within a space defined by said cables;
              and,

24
        e.    a plurality of elongated cover means, the last said means each
25            compromising a padded sheet material having a width greater
              than the distance between parallel edges of adjacently
26            disposed panels, each said cover means being disposed over
              at least a portion of one of the first and second cables and the
27            resilient means attached thereto and extending from the edge
              of a first panel.

28

James C. Mahan
U.S. District Judge

- 5 -

Claim 2 of the '122 patent states:

> The supported surface as described in Claim 1, wherein the resilient means are coil springs.

Claim 3 of the '122 patent states:

> The supported surface as defined in Claim 1, wherein the configuration of the surface is rectangular and the means to support the grid of cables comprises a first vertical post of a predetermined height disposed at each corner of the rectangle and third steel cables each extending between adjacent corner posts thereby presenting pairs of oppositely disposed parallel cables, the first and second cables being secured to extend between one of the pairs of oppositely disposed parallel third cables.

(*See, e.g.*, doc. # 84 at 7).

The parties agree that claim 1 is an independent claim on which claims 2 and 3 depend. (*See, e.g.*, docs. # 56, 57). The disputed claim terms appear in claims 1 through 3. The magistrate judge construed the disputed claim terms as follows:

| Claim Term: | Construction: |
| --- | --- |
| Cable | Wire rope or chain. |
| Elongated/elongated steel cables | Long in relation to its width. |
| In abutment with | Touching or next to. |
| Extremity & extremities | The farthest or most remote part, section, or point. |
| Plurality | Two or more. |
| Each panel being configured to space its edges from either a first or second cable defining a space | Does not need construction. |

(Doc. # 84 at 19).

### A.    Claim 1(a)

Applying the magistrate judge's construction order, claim 1(a) reads as follows:

> A grid of [longer than wide] steel cables disposed above ground, said grid being formed of [two or more] of first parallel cables spaced from each other, and [two or more] of second cables disposed

1
2
3

> transversely of and [touching or next to] the first cables, said second
> steel cables being parallel to, and spaced from, each other, said first
> and second cables defining [two or more] open spaces between the
> cables.

4      Defendant argues that its trampoline system does not form a grid by crisscrossing first and

5   second cables "between extremities." (Doc. # 87 at 3). In support, defendant attempts to distinguish

6   its system by arguing that it utilizes "cable segments" with each section forming its own extremities,

7   resulting in each cable containing extremities at the start and end of each segment. Defendant contends

8   the intermediate support posts at each intersection of its system act as "an extremity," and that no grid

9   exists "between extremities." Defendant contends that, by contrast, plaintiff's system uses "elongated

10  cables" with each cable forming extremities only at the outside perimeters, thereby creating a grid

11  "between extremities."

12      The court disagrees. Defendant attempts to apply the very definitions that the magistrate judge

13  expressly rejected in her claim construction order. Defendant's argument relies upon the term

14  "elongated" as meaning "made longer/extended." However, the magistrate judge rejected this

15  definition and held that the correct definition to be "long in relation to its width." The magistrate judge

16  adopted plaintiff's proposed claim construction that "the fact that the cables of the '122 patent must

17  form a 'grid' does not mean that every cable must extend the entire field of play, from one perimeter

18  to the other, without intermittent 'extremities' as [defendant] argues." (Doc. # 84 at 13).

19      Thus, the "cable segments" in defendant's system connect to form an "elongated cable" in

20  accordance with the meaning in claim 1(a). The "cable segments" in defendant's system create

21  "crisscrossing cable patterns [that] intersect inside the field of play." (Doc. # 57-6 at 2). Accordingly,

22  a grid is formed by first and second cables between extremities in defendant's system, and thus the

23  limitation of claim 1(a) is present.

24      *B.    Claim 1(b)*

25      The parties stipulated to the construction of one means-plus-function limitation, element b of

26  claim 1: "means to support each of said cables at their respective extremities." (Doc. # 30 at 2).

27  Generally, "[a] means-plus-function limitation requires a court first to identify the claimed function

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

1   and then determine the structure in the specification that corresponds to that function." *Frank's Casing*

2   *Crew & Rental Tools, Inc.*, 389 F.3d at 1376. In the case of claims with a means-plus-function

3   element, such as claim 1, the element is literally met when an accused device embodies "the

4   corresponding structure, materials, or acts described in the specification and equivalents thereof." 35

5   U.S.C. § 112.

6          Here, the parties agreed that the "function is to support each of said cables at their respective

7   extremities" and the "structure is posts and equivalents thereof." (Doc. # 30 at 2). Moreover, the

8   magistrate judge concluded that the term "extremities" in claim 1(b) meant "the farthest or most

9   remote part, section, or point." (Doc. # 84 at 17).

10         Defendant argues that this limitation requires that the means of support at the extremities be

11  sufficient to bear the entire load of the cables. (Doc. # 57 at 12). In support, defendant asserts that its

12  system's "chain segments" differ as they allow for easy repairs.

13         The court disagrees. "It is fundamental that one cannot avoid infringement merely by adding

14  elements if each element recited in the claims is found in the accused device." *Stiftung v. Renishaw*

15  *PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991). The court has carefully examined the '122 patent and

16  found no suggestion that the extremities must be sufficient to bear the "entire load" of the cables or

17  must be used as the sole means of support. Furthermore, "an improvement upon a patented device does

18  not necessarily avoid infringement." *Id*. at 1179 (citing *Hoyt v. Horne*, 145 U.S. 302, 309 (1892)).

19         The evidence shows that the steel post structure around defendant's trampoline surface

20  supports each of the cables at their respective extremities, where the cables are tied to the posts. (Doc.

21  # 56 at 13). Accordingly, the court finds that defendant's system meets the limitation in claim 1(b).

22     *C.     Claim 1(c) and claim 1(d)*

23     Applying the magistrate judge's construction order, claim 1(c) and 1(d) read as follows:

24         [two or more] first panels, each of said first panels being formed of
           a yieldable heavy fabric having edges and each panel being
25         configured to space its edges from either a first or second cable
           defining a space

26         . . .

27         . . .

28

> [two or more] resilient elements extending outwardly from each edge of each panel for attachment to the nearest of said first and second cables, thereby to support the panel on said first or second cables within a space defined by said cables

Defendant argues that because no grid is formed by crisscrossing cables between the extremities in its system, no plurality of spaces exists for mats. (Doc. # 87 at 3). This argument fails. As the court has found a grid exists in defendant's system, it necessarily follows that the plurality of spaces also exist. Defendant's system contains heavy fabric panels and the four edges of each panel are connected to cables by coil springs, which constitute a "resilient element" as used in the patent. (*See* doc. 56-10 at 5).

Accordingly, the court finds that defendant's system meets the limitations in claim 1, subsections (c) and (d).

### D.    Claim 1(e)

Applying the magistrate judge's construction order, claim 1(e) reads as follows:

> [two or more] [long in relation to their width] cover means, the last said means each compromising a padded sheet material having a width greater than the distance between parallel edges of adjacently disposed panels, each said cover means being disposed over at least a portion of one of the first and second cables and the resilient means attached thereto and extending from the edge of a first panel

The padded sheets in defendant's system are disposed over at least a portion of one of the first and second cables and the padded sheets cover the coil springs. (*See* doc. # 56-10 at 7). Defendant does not dispute this and has not set forth an argument to the contrary. Accordingly, the court finds defendant's system contains the limitation set forth in claim 1(e).

Thus, the court finds that defendant's system contains all the limitations of claim 1, and therefore literally infringes the '122 patent. Furthermore, "[b]ecause each claim is a separate statement of the patented invention, a patent is infringed if any one of its claim is infringed." *Shuffle Master, Inc., LLC*, 553 F. Supp. 2d at 1213. As a result, the court need not rule upon the question of infringement as to claims 2 and 3.

James C. Mahan
U.S. District Judge

- 9 -

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Sky Zone, LLC's motion for partial summary judgment (doc. # 85) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that defendant Flip-N-Out, LLC's motion for summary judgment (doc. # 87) be, and the same hereby is, DENIED.

DATED August 12, 2014.

_____
**UNITED STATES DISTRICT JUDGE**